## UNITED STATES
v.
## STRANGE BROS. HIDE CO.
### Civ. No. 778.

United States District Court,
N. D. Iowa, W. D.

Aug. 5, 1954.

Francis E. Van Alstine, U. S. Dist. Atty., Sioux City, Iowa, Richard W. Beebe, Asst. U. S. Dist. Atty., Sioux City, Iowa, and Philip C. Lovrien, Asst. U. S. Dist. Atty., Sioux City, Iowa, for plaintiff.

Robert B. Pike, Sioux City, Iowa, for defendant.

GRAVEN, District Judge.

This is an action brought by the United States under that portion of the so-called False Claims Act contained in Sections 231, 232, 233 and 235 of 31 U.S. C.A. The pertinent portion of Section 231 provides as follows:

"Any person * * * who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit."

The United States seeks to recover double damages and the statutory sum of $2,000 on each of 40 alleged false claims made by the defendant, an Iowa corporation, against the Commodity Credit Corporation. The alleged false claims are alleged to have been made by the defendant between 1945 and 1949 as "requests for payment" of sums in excess of amounts actually due defendant by virtue of its services under "Wool Handler's Agreements" entered into by

the defendant and the Commodity Credit Corporation. These agreements were entered into on March 6, 1945, December 27, 1945, April 12, 1946, August 22, 1947, and January 8, 1949. The United States alleges that the defendant made and presented the false claims knowing them to be "false, fictitious, or fraudulent".

The defendant, by a motion to strike, has raised the defense of the statute of limitations as to 22 of the claims. Those 22 claims are as follows:

|  |  |  |  |  | Date Presented for Payment<br>1945 |
|---|---|---|---|---|---|
| 1945 Program | Request | No. | 1 | | (Day and month unknown) |
| " | " | " | " | 2 | July 10, 1945 |
| " | " | " | " | 2a | December 14, 1945 |
| " | " | " | " | 3 | September 1, 1945 |
| " | " | " | " | 4 | July 4, 1945 |
| " | " | " | " | 5 | September 5, 1945 |
| " | " | " | " | 6 | November 13, 1945 |
| " | " | " | " | 7 | December 1, 1945 |
| " | " | " | " | 9 | December 7, 1945 |
| " | " | " | " | 10 | January 25, 1946 |
| 1946 Program | Request | No. | 1 | | (Date not known) |
| " | " | " | " | 2 | August 9, 1946 |
| " | " | " | " | 3 | September 13, 1946 |
| " | " | " | " | 4 | (Date not known) |
| " | " | " | " | 5 | October 25, 1946 |
| " | " | " | " | 6 | October 29, 1946 |
| " | " | " | " | 7 | November 1, 1946 |
| " | " | " | " | 8 | November 12, 1946 |
| " | " | " | " | 9 | December 4, 1946 |
| " | " | " | " | 10 | March 16, 1947 |
| " | " | " | " | 12 | September 4, 1947 |
| " | " | " | " | 13 | November 27, 1946 |

The complaint in this action was filed on October 5, 1953. It is the claim of the defendant that recovery on the 22 claims is barred by Section 235 of 31 U. S.C.A. which provides as follows:

"Every such suit shall be commenced within six years from the commission of the act, and not afterward."

The United States claims that the running of that limitation statute was suspended by the Wartime Suspension of Limitations Act, 18 U.S.C.A. § 3287. That Section provides as follows:

"When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress."

For the purposes of the motion, the truth of the allegations of the complaint that the claims in question were false claims and that the defendant made and presented them for payment knowing them to be "false, fictitious, or fraudulent" has to be assumed.

The question presented by the defendant's motion is whether the Wartime Suspension of Limitations Act is applicable to the six-year limitation contained in Section 235 of the so-called False Claims Act. The so-called False Claims Act was first enacted in 1863. 12 Stat. 696. It made certain acts to defraud the government punishable by fine and imprisonment. It provided that any person who committed any of the prohibited acts should forfeit and pay to the United States the sum of $2,000 and, in addition, double the amount of the damages. It also provided a qui tam action by an informer in which half of the recovery would go to the informer. The prohibited acts included the making of a claim against the United States knowing such claim "to be false, fictitious, or fraudulent". The different portions of the Act were in later statutory revisions distributed through the statutes. See United States ex rel. Marcus v. Hess, 1942, 317 U.S. 537, 539, 540, 63 S.Ct. 379, 87 L.Ed. 443. The portion imposing criminal penalties for knowingly making a "false, fictitious, or fraudulent" claim is now Section 287 of 18 U.S.C.A. The portion providing for the statutory recovery sum of $2,000 and double damages is now Section 231 of 31 U.S.C.A. Because of their common origin and background, both Sections are referred to in the decisions as the False Claims Act. Prosecutions under Section 287 come within the scope of the general federal three-year limitations statute contained in Section 3282 of 18 U.S.C.A. The six-year limitation statute contained in Section 235 of 31 U.S.C.A., which the defendant asserts bars this action as to the claims in question, has heretofore been set out.

The opportunities for abuse of the provisions in the False Claims Act permitting qui tam suits which are referred to in United States ex rel. Marcus v. Hess, supra, led to revision of the Act in 1943, drastically limiting the field for informers' suits. In United States v. Borin, 5 Cir., 1954, 209 F.2d 145, in an action by the Government under the False Claims Act growing out of alleged overpayments on illegal claims under the wartime meat subsidy program, it was held that the six-year limitation contained in Section 235 applied to suits by the Government as well as to those brought by an informer. That Court also held that the six years commenced to run at the time the false claim was made, not at the later time when the fraud was discovered. See also United States ex rel. Nitkey v. Dawes, 7 Cir., 1945, 151 F.2d 639, certiorari denied 327 U.S. 788, 66 S.Ct. 808, 90 L.Ed. 1015. The holding of the Borin case was that the Government was barred by Section 235 from its remedies under Section 231 of the False Claims Act but not precluded from common law remedies for fraud. The alleged false claims in that case were all made between 1943 and 1946 during wartime, but no question seems to have been raised concerning the possible applicability of the Wartime Suspension of Limitations Act, 18 U.S.C.A. § 3287.

The Wartime Suspension of Limitations Act, 18 U.S.C.A. § 3287, was originally enacted as temporary legislation on August 24, 1942, to suspend the running of statutes of limitation on certain wartime frauds until June 30, 1945, or such earlier date as the Congress or the President might designate. The measure was similar to the 1921–1927 extension to six years of the general three-year statute of limitations as to any "offenses involving the defrauding or attempts to defraud the United States", 42 Stat. 220, prompted by belated discovery of frauds committed during World War I. See Bridges v. United States, 1952, 346 U.S. 209, 217, 218, 73 S.Ct. 1055, 97 L.Ed. 1557. The World War I extension of the statute of limitations reached only "* * * offenses

* * * *now indictable* under any existing statutes * * *." 42 Stat. 220. (Emphasis supplied.) Bridges v. United States, supra, note 16, at page 217 of 346 U.S., at page 1060 of 73 S.Ct.

■ The World War II Act was amended in 1944, 58 Stat. 667, to provide for its expiration three years after the termination of hostilities of World War II as determined by the President or the Congress. See United States v. Grainger, 1953, 346 U.S. 235, at page 245, 73 S.Ct. 1069, at page 1075, 97 L. Ed. 1575. In October, 1944, 58 Stat. 781, a clause was added more specifically covering the handling of property under the Surplus Property Act of 1944, 50 U. S.C.A.Appendix, § 1611 et seq. (see United States v. Grainger, supra, 346 U. S. at page 246, 73 S.Ct. at page 1075) and in 1948 the Act took its present form as permanent legislation applicable "When the United States is at war * * *." By Proclamation of the President, No. 2714, 3 C.F.R., 1946 Supp., 77–78, 50 U.S.C.A.Appendix, § 601 note, termination of hostilities of World War II was declared December 31, 1946. Thus as to any matter within the scope of the Suspension Act occurring between August 25, 1939, and December 31, 1946, the ordinary statute of limitations did not begin to run until January 1, 1950. United States v. Grainger, supra, 346 U.S. at page 246, 73 S.Ct. at page 1075.

In the instant case 20 of the claims which the defendant moves to have stricken arose prior to December 31, 1946, and two arose subsequent thereto. The two which arose subsequent thereto are the claims of March 16, 1947, and September 4, 1947. In United States v. Smith, 1951, 342 U.S. 225, 72 S.Ct. 260, 96 L.Ed. 252, it was held that the Suspension Act applied only to matters prior to the termination of hostilities on December 31, 1946. Thus, in no event does the Suspension Act apply to the claims of March 16 and September 4, 1947. The complaint herein was, as heretofore noted, filed October 5, 1953,

and the six-year limitation of Section 235 of 31 U.S.C.A. bars all claims prior to October 5, 1947, except as they may be saved by the Wartime Suspension of Limitations Act. Therefore as to the two claims of March 16 and September 4, 1947, which were made after termination of hostilities, but more than six years before the filing of the complaint, the motion to strike should be sustained. It is of interest to note in United States v. Klinger 2 Cir., 1952, 199 F.2d 645, the Court read the Wartime Suspension of Limitations Act so as to avoid a situation where earlier offenses might be prosecuted although later ones were barred. The result was affirmed by an evenly divided Court, United States v. Klinger, 1953, 345 U.S. 979, 73 S.Ct. 1129, 97 L.Ed. 1393.

■ There remains for consideration defendant's motion to strike directed at 20 claims under the "1945 Program" and the "1946 Program" presented to the Commodity Credit Corporation by the defendant during 1945 and 1946. As to them recovery by the Government is barred by Section 235 of 31 U.S.C.A. unless saved by the Wartime Suspension of Limitations Act. United States v. Borin, supra. The case of United States v. Grainger, 1953, 346 U.S. 235, 73 S.Ct. 1069, 1074, 97 L.Ed. 1575 involved a prosecution where the defendant was charged with having violated Section 287 by presenting claims to the Commodity Credit Corporation in connection with its wool handling program knowing such claims to be "false, fictitious, or fraudulent". That Section is referred to by the Supreme Court as constituting the false claims clause of the False Claims Act. 346 U.S. at page 240, 73 S.Ct. at page 1072. The prosecution was commenced more than three years after the alleged acts. The defendant contended that the prosecution was barred by the general three-year limitation statute contained in Section 3282 of 18 U.S.C.A. The Government contended that the provisions of Section 3282 were suspended by the Wartime Suspension of

Limitations Act. The Court held that the three-year limitations statute contained in Section 3282 was suspended by the Wartime Suspension of Limitations Act. Thus, it is authoritatively settled that where a party knowingly made a "false, fictitious, or fraudulent" claim to the Commodity Credit Corporation in connection with its wool program and the Government proceeds by prosecution under Section 287 of the False Claims Act, the general three-year limitation statute contained in Section 3282 is suspended by the provisions of the Wartime Suspension of Limitations Act. That Act suspends the running of any statute of limitations applicable to any "offense" involving fraud or attempted fraud against the United States. The Court in the Grainger case holds that one who knowingly makes a "false, fictitious, or fraudulent" claim against the Commodity Credit Corporation in connection with its wool handling program in violation of Section 287 has committed an "offense" involving fraud within the scope of the Wartime Suspension of Limitations Act. In the instant case the United States has proceeded by civil action for the recovery of the statutory sum of $2,000 and double damages under Section 231 of the False Claims Act for the making of "false, fictitious, or fraudulent" claims against the Commodity Credit Corporation in connection with its wool handling program.

The United States Supreme Court has not specifically passed upon the question as to whether the Wartime Suspension of Limitations Act is applicable to the six-year statute of limitation, Section 235, relating to proceedings under Section 231.

In the instant case the United States argues that since Section 287 of 18 U.S.C.A. and Section 231 of 31 U.S.C.A. both prohibit the knowingly making of a "false, fictitious, or fraudulent" claim against the United States, and since the United States Supreme Court has held that such an act constitutes an "offense" within the scope of the Wartime Suspension of Limitations Act when the United States proceeds against the claimed wrongdoer by criminal prosecution under Section 287 of 18 U.S.C.A., such making is an "offense" within the scope of the Suspension Act when the United States avails itself of the civil remedies afforded to it under Section 231 for such making.

In the instant case it is the contention of the defendant that the Wartime Suspension of Limitations Act affects only statutes of limitation relating to criminal prosecutions and that it leaves unaffected statutes of limitation relating to civil actions by the United States for the recovery of damages and statutory recovery sums under Section 231 of 31 U.S.C.A. and similar statutes.

The cases which bear upon the question are not many in number. Some of them have already been referred to.

As heretofore noted, in United States v. Borin, supra, which involved wartime false claims under the meat subsidy program, it was held that the six-year limitation contained in Section 235 of 31 U.S.C.A. barred the claim of the United States for double damages and statutory recovery for false claims made against the United States between 1943 and 1946. The Wartime Suspension of Limitations Act was not discussed by the Court in that case. The Court held that there was no statute which ran against the Government's common law remedy for fraud.

In the case of United States v. Beard, D.C.Md.1954, 118 F.Supp. 297, 303, it was held that the Wartime Suspension of Limitations Act did not toll the running of the statute of limitations for the prosecution for income tax evasion.

In the case of United States ex rel. Marcus v. Hess, supra, the United States Supreme Court was of the view that the provisions of the False Claims Act, Sec. 231 of 31 U.S.C.A., for double damages and an additional award of $2,000 for each false claim were remedial in nature, and held that the "double jeopardy" provision of the Fifth Amendment did not bar an informer's qui tam action under Section 231 of 31 U.S.C.A. even though

the defendants had been prosecuted criminally for the same false claims which were the subject matter of the qui tam action.

In the case of United States v. Weaver, D.C.Ala.1952, 107 F.Supp. 963, a provision of the Surplus Property Act of 1944 was involved. A section of that Act provided that any person who committed fraudulent and other specified wrongful acts in connection with the disposal of property under that Act should pay to the United States the sum of $2,000 for each such act and double the damages sustained by the United States by reason thereof. Section 2462 of 28 U.S.C.A. provides that any action for the enforcement of any civil fine, penalty, or forfeiture provided by Act of Congress shall be commenced within five years. In the Weaver case the United States sought to recover the statutory sum of $2,000 for each of five separate alleged fraudulent acts of the defendant. The defendant contended that the action was barred by the five-year limitation contained in Section 2462 of 28 U.S.C.A. The United States asserted that the Wartime Suspension of Limitations Act was applicable to that Section. The District Court concluded that the Wartime Suspension of Limitations Act was intended to toll only the running of limitation statutes relating to criminal prosecutions and thus did not affect Section 2462. The District Court dismissed the complaint. The United States Court of Appeals for the Fifth Circuit reversed. United States v. Weaver, 1953, 207 F.2d 796. The ground of the reversal was that the statutory recovery sum of $2,000 under the Surplus Property Act was not a penalty, but constituted an award of damages of a compensatory nature and hence Section 2462 providing a five-year limitation for the recovery of penalties was not applicable. The Court held that there was no applicable statute of limitations. Under that holding there was no statute of limitations which the United States needed suspended in order to maintain the action. Thus, there was no need for the Court to discuss, and it did not discuss the Wartime Suspension of Limita-

tions Act. The Court was of the view that the case was governed by United States ex rel. Marcus v. Hess, supra, where the United States Supreme Court held that similar recoveries permitted under Section 231 of 31 U.S.C.A. of the False Claims Act were compensatory in nature.

In the case of United States v. Witherspoon, 6 Cir., 1954, 211 F.2d 858, the Court had under consideration the same Section of the Surplus Property Act that was considered by the United States Court of Appeals for the Fifth Circuit in the case of United States v. Weaver, supra. That Section, similar to Section 231 of the False Claims Act under consideration in the instant case, provided for the recovery by the United States in a civil action of a statutory recovery sum of $2,000 and double damages. The United States Court of Appeals for the Sixth Circuit held that the statutory recovery sum of $2,000 did constitute a penalty and that Section 2462, providing a five-year limitation for the recovery of "penalties," was applicable. The Court noted that the United States Court of Appeals for the Fifth Circuit had held in the case of United States v. Weaver, supra, the statutory recovery sum of $2,000 provided in the Surplus Property Act was not a penalty. In the Witherspoon case a number of claims were involved. All of them except one arose after December 31, 1946, and more than five years prior to the commencement of the action. The Court held that those claims which arose after December 31, 1946, were barred by the provisions of Section 2462. However, the Court held that the one claim which arose prior to December 31, 1946, was not barred. It held that the Wartime Suspension of Limitations Act suspended the provision of Section 2462 as to that claim. That particular claim was based upon alleged fraudulent conduct of the defendant in connection with a veteran's preference certificate. The Court regarded the alleged fraudulent act of the defendant as being an "offense" within the purview of the Wartime Suspension of Limitations Act. The action

184

in that case, similar to the action in the instant case, was a civil action for the recovery of a statutory recovery award of $2,000.

 It would seem that there is not necessarily involved in the instant case the question of whether the double damages and statutory recovery award of $2,000 under Section 231 of the False Claims Act are compensatory in nature or in the nature of penalties. That question is necessarily involved in cases having to do with the "double jeopardy" provision of the Fifth Amendment and in cases having to do with the applicability of a statute of limitation relating to "penalties." What is involved in the instant case is the question of whether the alleged wrongdoing of the defendant in connection with each of the claims in question constitutes an "offense" within the purview of the Wartime Suspension of Limitations Act. In order for fraud to constitute an "offense" within the purview of the Wartime Suspension of Limitations Act, it must be fraud of a pecuniary or property nature. Bridges v. United States, 1952, 346 U.S. 209, 217, 230, 73 S.Ct. 1055, 1075, 97 L.Ed. 1557. The knowingly making of a "false, fictitious, or fraudulent" claim against the Commodity Credit Corporation in connection with its wool handling program is a fraud of a pecuniary or property nature. United States v. Grainger, supra. The knowingly making of a "false, fictitious, or fraudulent" claim against the Commodity Credit Corporation in connection with its wool handling program is an "offense" within the purview of the Wartime Suspension of Limitations Act when the United States proceeds against a wrongdoer for such wrongdoing by criminal prosecution under Section 287 of 18 U.S.C.A. United States v. Grainger, supra. It would seem that the same wrongdoing by the same wrongdoer would be none the less an "offense" within the purview of the Wartime Suspension of Limitations Act when the United States proceeds against him for such wrongdoing by a civil action under Section 231 of 31

U.S.C.A. The case of United States v. Witherspoon, supra, supports this view.

It is the holding of the Court that the defendant's motion to strike be sustained as to the claims of the plaintiff based upon defendant's "requests for payment" numbers 10 and 11 under the "1946 Program" dated March 16, 1947, and September 4, 1947, but overruled as to the other 20 claims to which its motion was addressed.