**ERIE BASIN METAL PRODUCTS, Inc.**
v.
**The UNITED STATES.**
No. 50271.

United States Court of Claims.
Nov. 7, 1956.

Robert J. Corber, Washington, D. C., for plaintiff. Donald O. Lincoln and Steptoe & Johnson, Washington, D. C., were on the briefs.

Julian R. Wilheim, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

This case is again before the court, this time on plaintiff's motion to dismiss defendant's fifth, sixth and seventh counterclaims because barred by the statute of limitations.

In its fifth counterclaim defendant alleges that in renegotiation proceedings on various contracts it had with the defendant, plaintiff made various false statements and filed various false documents tending to show that its excess profits were less than they were in fact. The fraudulent acts and statements, with respect to profits received or accrued by plaintiff during its fiscal year ending November 30, 1943, were alleged to have been made or committed between May 29, 1944, and November 23, 1945. On May 6, 1946, the War Contracts Price Adjustment Board found that plaintiff had real- ized excessive profits in the amount of $1,270,000.

It is also alleged that for the fiscal year 1944, plaintiff likewise made fraudulent statements and filed fraudulent documents with the purpose of showing that its excessive profits for the fiscal year ending November 30, 1944, were less than they were in fact. Said statements and acts were alleged to have been made and committed between June 23, 1945, and October 1, 1954.

· However, on October 1, 1954, the Renegotiation Board determined that plaintiff had realized excessive profits for the fiscal year ending November 30, 1944, in the sum of $2,200,000.

It is also alleged that in the renegotiation proceedings for the year ending November 30, 1945, plaintiff made various false statements and committed various fraudulent acts with reference to its excessive profits for the fiscal year ending November 30, 1945, such statements having been made and such acts having been committed between August 6, 1945, and December 1, 1954.

On December 1, 1954 plaintiff entered into a certain agreement with the Renegotiation Board for the determination of its excessive profits for this year.

It is also alleged that plaintiff made various false statements and filed various false documents and reports in connection with its claims under contracts terminated by the defendant for the convenience of the Government. These acts and statements are alleged to have been made and committed at various times between August 22, 1945, and March 21, 1946.

On account of these alleged fraudulent statements of the plaintiff, in its fifth counterclaim defendant asserts that under section 19(c) (1) of the Contract Settlement Act of 1944, 58 Stat. 649, 667, 41 U.S.C.A. § 119, plaintiff is indebted to it in the amount of $2,218,558.27, plus the sum of $2,000 for each act committed in violation of that Act and, further, that under section 2514 of 28 U.S.C. all of

plaintiff's claims should be forfeited to the United States.

Section 19(c) (1) of the Contract Settlement Act, supra, provides a claimant shall pay to the United States "an amount equal to 25 per centum of any amount thereby sought to be wrongfully secured or obtained but not actually received, and (2) shall forfeit and refund" any amount wrongfully received, "and (3) shall in addition pay to the United States the sum of $2,000 for each such act, and double the amount of any damage which the United States may have sustained by reason thereof, together with the costs of suit."

Section 2514 of 28 U.S.C. provides:

"*Forfeiture of fraudulent claims.*

"A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.

"In such cases the Court of Claims shall specifically find such fraud or attempt and render judgment of forfeiture."

In its sixth counterclaim, defendant seeks to recover, under the False Claims Act, 31 U.S.C.A. § 231, double damages of $1,832,250 plus $2,000 for each fraudulent act, as set out in the fifth counterclaim.

In its seventh counterclaim defendant relies alone on the alleged acts of fraud committed in connection with the termination claims asserted by plaintiff in its second and third causes of action. It seeks actual damages allegedly amounting to $1,526,875 and also for a forfeiture of plaintiff's claims under section 2514 of 28 U.S.C.

Plaintiff moves to dismiss these counterclaims on the ground, among others, that they are barred by the statute of limitations.

Section 2462 of 28 U.S.C. provides:

"*Time for commencing proceedings.*        :

"Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon."

All the fraudulent acts alleged in connection with renegotiation of excessive profits for the fiscal year ending in 1943 were committed prior to November 23, 1945, and, hence, an action with respect to them was barred after November 23, 1950. The fifth counterclaim was filed April 9, 1956. With respect to the other two fiscal years, it is alleged that fraudulent acts in connection with renegotiation proceedings were perpetrated at various times up to October 1, 1954, with respect to the fiscal year 1944, and up to December 1, 1954, with respect to the fiscal year 1945.

The fraudulent acts alleged to have been committed in connection with the termination claims were committed at various times between August 22, 1945, and March 21, 1946. This was more than 10 years prior to the filing of the counterclaims and, therefore, defendant's demand for fines and forfeitures with respect to them are barred by section 2462, supra, with the possible exception of its demand under the False Claims Act.

Claims under that Act are barred in six years. Since the last fraudulent act in connection with the termination claims is alleged to have been committed on March 21, 1946, a claim based thereon must have been filed by March 21, 1952. Defendant's counterclaim was filed April 9, 1956, and it would, therefore, be barred, unless defendant is right in saying that the statute of limitations was tolled by the filing of plaintiff's petition on August 13, 1951. Defendant says the statute is tolled where defendant's counter-action must be set up by counterclaim

and cannot be asserted in an independent proceeding.

In Canned Foods v. United States, Ct. Cl., 140 F.Supp. 771, we held, following Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 274, 88 L.Ed. 376, that a claim under the False Claims Act was "a separate statutory cause of action," and did not have to be asserted as a counterclaim. If this is true, whatever may be said about the tolling of the statute where the Government's demand must be set up by counterclaim, the statute is not tolled against a demand under the False Claims Act.

Defendant, therefore, is not entitled to recover under the False Claims Act on account of any fraudulent acts or statements made more than six years before the filing of the counterclaims.

■ Defendant also says that section 2462 does not apply to the demands it asserts under the Contract Settlement Act and the False Claims Act, because these Acts do not impose penalties and forfeitures, citing United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 and Rex Trailer v. United States, 350 U.S. 148, 76 S.Ct. 219. In both of these cases the contractors asserted that, since they had been convicted criminally for the frauds perpetrated, they would be placed in double jeopardy if the Government's claim for a money judgment against them should be sustained. That was the only issue before the Supreme Court and the only one it decided. It said that claims under the False Claims Act, in one case, and under the Surplus Property Act, in the other, the fraud section of which is substantially the same as the Contract Settlement Act, were civil and not criminal actions and, hence, the plea of double jeopardy could not be sustained. Section 2462 relates to an action for a *"civil* fine, penalty, or forfeiture". (Italics supplied.) The Supreme Court did not say that the Surplus Property Act and the False Claims Act did not impose *civil* penalties; it merely said they were not criminal penalties.

We think that both Acts imposed a penalty to be recovered by the Government in a civil action. The purpose could not have been to save the Government the necessity of proving actual damages for the fraud committed, as in liquidated damages provisions, because the amount of the recovery was double the damages actually sustained. It was the purpose to make the consequences of fraud so great as to deter the commission of it. If fraud was attempted but was not accomplished, in which case there would be no actual damage except the expense of uncovering the fraud, the penalty was 25 percent of the amount sought to be wrongfully secured. If the fraud was successful, the amount wrongfully secured was to be refunded and, in addition, double the amount of the actual damage was recoverable, plus $2,000 for each fraudulent act.

This was not a provision for liquidated damages—damages had to be proven to recover under the double damages provision. The recovery of simple damages would not have been a penalty, but the recovery of double damages is.

The False Claims Act also provides for double damages, and $2,000 for each fraudulent act. Besides, it contains its own limitation of six years.

Sedgwick, in his work on Damages (section 405), lays down this guide for distinguishing between a penalty and liquidated damages:

"Whenever the damages are evidently the subject of calculation and adjustment between the parties and a certain sum was agreed upon and intended as compensation, *and is in fact reasonable in amount,* it will be allowed by the court as liquidated damages." [Italics supplied.]

Simple damages are compensatory; double damages, of necessity, are a penalty.

Section 2462 of 28 U.S.C. provides that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless com-

**926**

menced within five years from the date when the claim first accrued * * *."

If this section does not apply to the character of action asserted by defendant in its counterclaims, we can conceive of no action to which it could apply.

. The Sixth Circuit Court of Appeals in United States v. Witherspoon, 211 F.2d 858, was of the same opinion with reference to a similar provision of the Surplus Property Act. The Fifth Circuit ruled to the contrary in United States v. Weaver, 207 F.2d 796.

In Goggin, Trustee v. United States, Ct.Cl., 140 F.Supp. 557, we said the Supreme Court in the Rex Trailer case, supra, held that a provision of the Surplus Property Act, similar to the pertinent provision . of the Contract Settlement Act, was a provision for liquidated damages and not for a penalty, and that it was not subject to the limitation of section 2462; but we did not base our decision on that ground. A re-reading of the Supreme Court's opinion in the Rex Trailer case, supra, convinces us that our statement of the holding in that case went too far. The applicability of section 2462 was not before the court; nor was the question of whether the provision for double damages and $2,000 for each fraudulent act was a provision for a penalty or for liquidated damages. The sole question was whether the provision was civil or criminal in nature. The court said, at the top of page 153, of 350 U.S., at page 222, of 76 S.Ct., that "The Government's recovery here is *comparable* to the recovery under liquidated-damage provisions which fix compensation for anticipated loss"; [Italics supplied] but it did not say it was not a penalty as that word was used in section 2462.

Upon further consideration, we think it was.

█ In the fifth counterclaim defendant sets up alleged acts of fraud in connection with the renegotiation proceedings to determine the amount of the excessive profits realized by plaintiff on cer-

tain contracts with the Government, and alleges its right to recover under the Contract Settlement Act. In Dugan & McNamara, Inc., v. United States, 124 F. Supp. 650, 130 Ct.Cl. 603, 613, 614, we held that there was no right to recover under this Act except for fraud committed in connection with the terminated contracts. We reaffirm that holding.

All the alleged fraudulent acts and statements in connection with the termination claims were made and done more than five years before the filing of the fifth counterclaim. It is not clear whether fraud was perpetrated in connection with renegotiation proceedings on these terminated contracts within five years of the filing of the counterclaims. If so, they may be proven, but with reference to the terminated contracts only.

Defendant is entitled to recover under the False Claims Act, on which it sues in its sixth counterclaim, for all acts of fraud committed relative to the renegotiation proceedings, whether on terminated contracts or not, if committed within six years from the time it filed its counterclaim.

█ There is, of course, no limitation against the Government on a common law action of fraud, which defendant asserts in its seventh counterclaim.

█ If fraud was committed in connection with plaintiff's claims arising from the termination of its contracts, such claims may be forfeited under section 2514 of 28 U.S.C. Section 2462 applies only to actions instituted by the Government. Fraud committed in the renegotiation proceedings is not covered by section 2514.

Plaintiff's motion to dismiss the counterclaims is sustained in part, and overruled in part, but testimony will be limited to the extent set out above.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.